ORIGINAL

# In the United States Court of Federal Claims

No. 12-724C
(Filed: November 27, 2013)

FILED

NOV 2 7 2013

U.S. COURT OF
FEDERAL CLAIMS

* * * * * * * * * * * * * * * * * * * * *

CHARLES J. MONZO,

       *Plaintiff*,

v.

THE UNITED STATES,

       *Defendant.*

* * * * * * * * * * * * * * * * * * * * * *

OPINION

BRUGGINK, Judge

Plaintiff claims he is owed a cash award for a suggestion he made to his employer, the Social Security Administration, pursuant to its Employee Suggestion Program. Defendant has moved to dismiss the complaint for lack of jurisdiction. The motion is fully briefed, and oral argument is unnecessary. For the reasons explained below, we deny the motion to dismiss.

BACKGROUND[1]

Federal agencies are authorized by 5 U.S.C. § 4503 to award cash bonuses and/ or honorary recognition to employees who, "by [their] suggestion, invention, superior accomplishment . . . contribute[] to the efficiency, economy, or other improvement of Government operations or achieve[] a significant reduction in paper work." 5 U.S.C. § 4503 (2012). To that end, the Social Security Administration ("SSA") established its Employee

---

[1]These background facts are drawn from plaintiff's complaint, attachments to his complaint, and the attachments to defendant's motion to dismiss. The facts are mostly undisputed.

Suggestion Program "(ESP") and promulgated rules for the program in its Personnel Manual for Supervisors.

Plaintiff, Mr. Monzo, worked for the SSA for thirty years until he retired in 2006. During the relevant time period, he worked at the Philadelphia Regional Office for Quality Assurance. He suggested to SSA that it develop an automated telephone system for beneficiaries to report wages to the SSA's Supplemental Security Income Program.[2]  Prior to an automated system, program recipients had to deliver wage reports in hard format or via fax. The data then had to be manually entered into each beneficiary's record. Plaintiff alleges that he first presented his idea to his supervisors orally in the summer of 1998 and then again in September of 1998. He followed up the oral suggestion with a formal written suggestion in March of 1999 to the Central Suggestion Team in SSA's Baltimore, Maryland Central Office. PX 3.[3]  SSA designated the official suggestion as No. 9900789.

SSA denied the first written suggestion in April 1999 in a report, stating that prior work teams had twice previously suggested the same thing. PX 4 (Suggestion Evaluation Report, Apr. 27, 1999).  Plaintiff requested reconsideration two years later on April 27, 2001, arguing that his oral suggestion predated either of the cited team suggestions. SSA first deemed the request to be a new suggestion and denied it in September 2001 because, at that time, "SSA ha[d] made no commitment to implement" the automated reporting system suggestion. PX 6 (Suggestion Evaluation Report, Sep. 21, 2001). The second denial did not mention the reason given in the first denial.

Plaintiff requested reconsideration of the September 2001 denial and asked that his suggestion remain pending because SSA had undertaken a pilot program to test an automated telephone reporting system in 2002. PX 7 (Apr. 22, 2002).  That request was met by a denial on May 16, 2002. The reason given by SSA was that plaintiff's suggestion had already been "thoroughly evaluated" and plaintiff had not submitted any new material "that warrant[ed] an additional review." PX 8. Plaintiff requested reconsideration once again in June 2002, see PX 9, and enclosed a copy of a SSA document that contained

---

[2]Recipients of supplemental social security income must report actual wages on a monthly basis.

[3]"PX" refers to those exhibits attached to plaintiff's complaint. "DX" refers to exhibits attached to defendant's motion to dismiss.

a corrective action plan in which SSA detailed a pilot program employing "touchtone telephone technology for reporting purposes." PX 10 at 8. This was met with a denial on July 9, 2002. PX 11. This fourth decision gave as a reason that there had been prior management consideration, citing the two prior suggestions referenced in the first denial. It also stated that an additional prior consideration of the idea had taken place in a July 1998 management meeting. *See id.*

On November 29, 2002, apparently in response to an email sent by plaintiff after the fourth denial, SSA informed Mr. Monzo that his suggestion would remain pending while the pilot program was completed and a final decision made on whether to implement. PX 13 (Letter from Phil Young, Director, Office of Assistance and Insurance Program Quality, Nov. 29, 2002).

Finally, in 2008, plaintiff received the fifth denial of his suggestion. The SSA Central Office again cited the July 10, 1998 management consideration of the idea and stated that, because that consideration predated plaintiff's September 1998 oral suggestion, plaintiff was not eligible for an award. In the interim, SSA concluded the pilot program and implemented a telephonic wage reporting system after approval by the Office of Management and Budget. Plaintiff continues to maintain that his suggestion predated any management consideration and that he is thus owed an award for the substantial savings resulting from the automated system.

## DISCUSSION

In deciding a motion to dismiss, we construe the allegations in the complaint in the light most favorable to plaintiff and assume all unchallenged factual allegations to be true. *See, e.g., Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995). Plaintiff has the burden of establishing subject matter jurisdiction. *McNutty v. Gen. Motors Acceptance Corp. Of Ind.*, 298 U.S. 178, 189 (1936). Defendant may challenge plaintiff's allegations, and the court is free to consider materials outside of the pleadings in deciding the question of jurisdiction. *Shoshone Indian Tribe of the Wind River Reservation v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012).

The Court of Federal Claims' jurisdiction lies primarily in cases in which a plaintiff can identify a source of law giving him the right to demand the payment of money. The court's principle jurisdictional statute allows the court to "render judgment against the United States founded either upon the

3

Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2006). This means that a claimant must be able to identify a "money-mandating" provision of law, regulation, or contract "affording it a right to money damages." *Terran v. Sec'y of Heath and Human Servs.*, 195 F.3d 1302, 1309 (Fed. Cir. 1999).

Defendant contends that neither 5 U.S.C. § 4503 nor SSA's Employee Suggestion Program guidelines are money-mandating. Defendant also argues that plaintiff has not alleged the necessary elements of an implied-in-fact contract with SSA. The result, for defendant, is that plaintiff has not alleged a substantive source of law giving rise to jurisdiction under the Tucker Act.

Plaintiff's response is first that, although 5 U.S.C. § 4503 read alone may not be money-mandating, in combination with the agency's program guidelines, the agency has relinquished the discretion afforded by the statute and created a regulatory framework under which a reward payment is mandated if certain conditions are met. Plaintiff also argues that he has alleged the existence of a valid implied-in-fact contract.

I. SSA Has Obligated Itself To Pay Money Under The Employee Suggestion Program Under Certain Conditions

There is no dispute between the parties that the statute, in isolation, does not mandate the payment of money. This court has held likewise. *See, e.g.*, *Cooley v. United States*, 76 Fed. Cl. 549, 556-57 (2007) (discussion of section 4503). Where the agency is vested with unfettered discretion, we have held that employee suggestion programs do not provide a basis for jurisdiction in this court. *See, e.g.*, *Anderson v. United States*, 73 Fed. Cl. 199, 2001 (2006); *Rosano v. United States*, 9 Cl. Ct. 137, 1445-45 (1985). Those cases cite the Court of Claims' decision in *Adair v. United States*, in which the court held that, "a statue providing for solely discretionary payment of money does not give rise to a 'right to recover money damages from the United States.'" 648 F.2d 1318, 1322 (1981) (quoting *United States v. Testan*, 424 U.S. 392, 396 (1976)). In that case, a statute authorizing special incentive pay to physicians in the Public Health Service and the military was not money-mandating because it gave discretion to award the pay under certain circumstances but did not require it. *Id.* at 1322-23. This case does not end there, however.

4

Part 451 of Title 5 of the Code of Federal Regulations instructs agencies to "develop one or more award programs for employees covered by this subpart." 5 C.F.R. § 451.103 (2013). Subpart 104 states that an agency "may grant a cash, honorary, or informal recognition award . . . on the basis of–(1) a suggestion, invention, superior accomplishment . . . that contributes to efficiency, economy, or other improvement of Government operations." *Id.* § 451.104. At this multi-agency level of regulation, agencies clearly retain discretion whether to award payments. Our inquiry goes further, however.

Subchapter 3 of Chapter S451 of the SSA's Personnel Manual for Supervisors goes into great detail in providing guidelines for determining whether to reward employee suggestions. The program guidelines detail who is covered, definitions for various terms used, how employees submit a suggestion, how a suggestion is to be evaluated, who evaluates it, limitations on what factors may be considered, a time frame for decision, conditions for award, amounts of award, reopening consideration of previously considered suggestions, and reconsideration of previous suggestions. *See* DX 1 at 1-2 (Employee Suggestion Program Table of Contents).

In the section entitled "Awards," the guidelines lay out the conditions for granting an award and how to determine the amount of the award. The conditions are listed as (a) "Adoption of the suggestion in full or in part, or if the actual idea is not adopted but stimulates a better solution to an existing problem; and [(b)] Management's commitment to implement; no suggestion is eligible for adoption unless it can and will be implemented." DX 1 at 15. The next subsection goes on to instruct how to calculate the award and points to Exhibit 4 at end of the subchapter for further guidance. This subsection also states that the "contribution must save $1,000 or more."

The Federal Circuit has recognized that "a statute or regulation that provides for payment of money can qualify as money-mandating if the plaintiff's claim is that the statute or regulation creates a right to payment upon a showing that the plaintiff qualifies for that payment by satisfying designated statutory or regulatory requirements." *Price v. Panetta*, 674 F.3d 1335, 1339 (Fed. Cir. 2012). The statute or regulation "may grant the claimant a right to recover damages either expressly or by implication." *Navajo Nation v. United States*, 537 U.S. 488, 506 (2003). If a statute or regulation does mandate the payment of money, it is sufficient to trigger jurisdiction if plaintiff shows that "he is within the class of plaintiffs entitled to recover under the money-mandating source." *Jan's Helicopter Serv. v. United States*, 525 F.3d 1299,

1307 (Fed. Cir. 2008). The question of whether the claimant actually "'falls within the terms of the statute'" or regulation is a merits issue. *Greenlee County v. United States*, 487 F.3d 871, 876 (Fed. Cir. 2007) (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005).

The program guidelines lay out two conditions for award. One is that the suggestion is adopted in full or in part, or stimulates a better solution, and the other condition is a commitment by the agency to implement the suggestion. The guidelines define the term "Adopted Suggestion" to mean an "idea evaluated by the office with primary functional responsibility, benefitting the government and receiving a written commitment from management to implement." DX 1 at 3. "Implementation" occurs when "actions substantially the same as those proposed by the suggester are effected by management, even if minor modifications or improvements in the original proposal have been made." *Id.* These sections and definitions, read together, clearly suggest that SSA *will* grant a cash award when the suggestion is evaluated by the office with responsibility over the covered section, that office commits to implement the suggestion, it is actually or will be actually implemented, and the suggestion saves over $1000 dollars.

Defendant would have the court read language elsewhere in the guidelines as preserving agency discretion as to whether to award. In section D, "Evaluating Suggestions," various factors are listed for evaluators to consider. The second directs the agency to "[d]ecide whether or not to adopt the suggestion and if the suggestion is adopted, consider granting an award." DX 1 at 12. This defendant avers is a clear statement that awards are not mandatory even if all conditions are met. We disagree. That statement, read in context with the rest of that section and surrounding sections, provides only that evaluators are to decide whether the suggester is eligible for an award. The fifth factor listed in the same section indicates this is the correct understanding:

> Evaluate each suggestion on its merits. Evaluators should be careful not to disprove a suggestion just because the idea appears to be job-related, an existing directive precludes the use of the idea suggested or the suggested idea is already covered by an existing directive. In certain situations, suggestions of these types may be adopted. CSS should be contacted for additional instructions.

6

*Id.* This paragraph references, in part, the next section in the subchapter, section G, "Special Considerations," in which evaluators are required to consider whether an adopted suggestion is "within the suggester's job responsibilities." DX 1 at 13. If it is, "normally, . . . he/she will not be eligible for an award" unless "the scope and magnitude of application of the suggestion far exceed what would reasonably be expected of the employee." *Id.* In this special circumstance, even though an idea is to be adopted, the suggester will not be paid an award. The implication is that, if that circumstance does not apply, the suggester will be paid.

Section G also instructs evaluators to complete the whole adoption package, which includes the evaluation report, signed SSA-171-U5 form, and a "brief explanation of how the idea submitted falls within the suggester's job responsibilities." *Id.* The SSA-171-U5 form is the form for processing a cash award. The package is then sent to the final decision maker(s) at the Central Suggestion Section ("CSS"). This suggests that, unless ineligible, adopted suggestions come with cash awards if the benefit to the agency exceeds the $1000 threshold.

Further buttressing this reading are the duties of the evaluators, managers of evaluators, and the CSS. Evaluators are instructed to, among other things, "[p]repare a Form SSA-171-U5, Recommendation for Cash Award, if the suggestion is adopted and a cash award is applicable." DX 1 at 5. Along with that form, the evaluator is to send a worksheet "to support tangible benefits." *Id.* That sheet is a form for calculating tangible benefits in determining the award amount. *See* DX 1 at 16-17, Ex. 4. Among the duties listed for supervisors or managers of evaluators is to "sign the appropriate line(s) of the SSA-171-U5, Recommendation for Cash Award" if the suggestion is to be adopted. DX 1 at 6. They are also instructed to assist the CSS in determining "whether a suggestion falls within a suggester's job responsibilities." *Id.* CSS's duty list contains an instruction to "[e]nsure that suggestion awards meet the guidelines, including (1) Attempting to determine, if necessary, if a suggestion falls within the suggester's expected job responsibilities. (2) Reviewing and approving SSA-171-U5, Recommendations for Cash Award, and award computations prior to authorization of funds." DX 1 at 7. All of this suggests that, if a suggestion meets the criteria and the suggester is eligible, an award should be forthcoming.

In the section dealing with how to compute award amounts, there is a subsection called "Adoption With No Cash Award." It provides that, "[i]f a

suggestion is within the employee's job responsibility or when the benefits from an adopted employee suggestion have a value of less than $1000, no cash award is payable." DX 1 at 17. The subsection goes on to state that a thank you letter may be sent anyway. No other scenario for adoption with no payment is contemplated.

SSA has bound itself to these guidelines. Although it still has discretion over how much to award, *see* DX 1 at 16-17, Exs. 4-5, the decision whether to award a payment has been made. If the conditions are met, there should be a payment. *Cf. Ridenour v. United States*, 44 Fed. Cl. 202, 208 (1999) (stating that a prior version of SSA's ESP guidelines required the payment of money if the employee was eligible and going on to hold that this created an implied-in-fact contract between suggesters and SSA).

Plaintiff has alleged that he submitted a written suggestion, that the suggestion was implemented, and that SSA nevertheless declined to pay him an award. Plaintiff is within the class of claimants potentially entitled to recover under the regulation. Nothing more is required by the Tucker Act to trigger jurisdiction. Whether Mr. Monzo is entitled to an award–that is to say whether there was prior agency consideration of the idea or whether some special exception applies–is a merits question for another day. We have jurisdiction over the complaint.

II.   Whether Plaintiff Has Alleged the Existence Of An Implied-In-Fact Contract Sufficient For Jurisdiction

Plaintiff also contends that he has plead the existence of an implied-in-fact contract, which he alleges was formed when the agency implemented his suggestion. Defendant denies that such a contract could have been formed because the agency repeatedly told plaintiff that it was not adopting plaintiff's suggestion or that he was not eligible for award due to prior management consideration. Plaintiff responds that, in essence, the agency accepted his offer by performance when it implemented the telephone wage reporting system.

We need not reach the question of whether an implied-in-fact contract was formed. As explained above, the guidelines themselves mandate payment if certain conditions are met. In deciding whether SSA accepted plaintiff's offer (suggestion) by performance (implementing the automated system) we would be confronted with the same issues. "Acceptance of an offer can be manifested by parties' conduct, and conduct alone can create an implied-in-

8

fact contract." *Scott Timber Co. v. United States*, 97 Fed. Cl. 685, 696 (2011), *rev'd on other grounds*, 692 F.3d 1365 (Fed. Cir. 2012). Defendant's contention that it did not implement his suggestion is thus misplaced at this juncture.

## CONCLUSION

We have jurisdiction over the complaint. Whether plaintiff is entitled to an award under the ESP is a separate question. Accordingly, defendant's motion to dismiss is denied.

ERIC G. BRUGGINK
Judge